```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF INDIANA
                    SOUTH BEND DIVISION
```

MICHAEL H. POTYSMAN,            )
                                )
    Plaintiff,                  )
                                )
vs.                             )
                                ) NO. 3:14-CV-00573
CAROLYN W. COLVIN,              )
Acting Commissioner of          )
Social Security,                )
                                )
    Defendant.                  )


## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits and Supplemental Security Income to Plaintiff Michael H. Potysman. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

BACKGROUND

In March 2011, Plaintiff Michael H. Potysman ("Potysman") filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 *et seq.,* and Supplemental Security Income

1

("SSI") under Title XVI of the Social Security Act, 42 U.S.C. section 1381, *et. seq*. Potysman alleged that his disability began on April 10, 2010. The Social Security Administration ("SSA") denied his initial applications and also denied his claims upon reconsideration.

Potysman requested a hearing, and on October 31, 2012, Potysman appeared with his attorney at an administration hearing before Administrative Law Judge ("ALJ") David R. Bruce. Testimony was provided by Potysman and vocational expert Richard T. Fisher. On November 29, 2012, the ALJ issued a decision denying Potysman's claim, finding him not disabled because he could perform his past relevant work as a security guard and house officer, despite the additional limitations which erode his light occupational base. (Tr. 20.)

Potysman requested that the Appeals Council review the ALJ's decision, but that request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Potysman has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).

DISCUSSION

Facts

Potysman was born in November 1956 and was 53 years old on the alleged disability onset date of April 10, 2010. (Tr. 32.) He completed the eighth grade and did not acquire his GED. (Tr. 34.) His past relevant work includes employment as a security guard, stock clerk, house officer/detective, commercial cleaner and corrugator operator helper. (Tr. 62-63.) Potysman alleges the following impairments: hepatitis C, degenerative disc disease of the lumbar spine, depression, anxiety, attention deficit/hyperactivity disorder ("ADHD"), and obesity. (DE #21 at 2.) The medical evidence is largely undisputed and has been set forth in detail in both the ALJ's decision and Potysman's opening brief. There is no reason to repeat it in detail here, although pertinent details are discussed below as needed.

Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id*. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 28 L. Ed. 2d 842 (1971) (citation omitted). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or reweighing the evidence. *See Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). While a decision denying benefits need not address every piece of evidence, the ALJ must provide a "logical bridge" between the evidence and his conclusion that the claimant is not disabled. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

As a threshold matter, for a claimant to be eligible for DIB or SSI benefits under the Social Security Act, the claimant must establish that he is disabled. 42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(1). To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five-step evaluation:

    Step 1:   Is the claimant performing substantially gainful activity? If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

    Step 2:   Is the claimant's impairment or combination of impairments "severe" and expected to last at

| | least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3. |
|---|---|
| Step 3: | Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4. |
| Step 4: | Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner. |
| Step 5: | Is the claimant able to perform any other work within his residual functional capacity in the national economy? If yes, the claim is denied; if no, the claimant is disabled. |

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920 (a)(4)(i)-(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994).

In this case, the ALJ found that Potysman had not engaged in substantial gainful activity since April 10, 2010, his alleged onset date. (Tr. 13.) The ALJ found that Potysman suffered from the following severe impairments: hepatitis C, obesity, and degenerative disc disease of the lumbar spine. (*Id.*) The ALJ further found that Potysman did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 15.)

5

The ALJ made the following Residual Functional Capacity ("RFC") determination:

> [T]he claimant has the [RFC] to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant could lift/carry and push/pull up to 10 pounds frequently and 20 pounds occasionally. He could sit a total of about six hours in an eight-hour workday and stand/walk a total of about six hours in an eight-hour workday.

(Tr. 15-16.) Based upon Potysman's RFC, the ALJ found that Potysman is able to perform his past relevant work as a security guard and house officer as they are generally and normally performed in the national economy, despite the additional limitations which erode his light occupational base. (Tr. 20.)

Potysman believes that the ALJ committed three errors requiring reversal. Potysman argues that the ALJ's failure to consider Potysman's mental limitations was reversible error because it would have significantly changed his RFC and made him disabled. Potysman also asserts that the ALJ's reasons for not giving controlling weight to the opinions of his treating physicians are not supported by substantial evidence. Finally, Potysman maintains that the ALJ's credibility determination is not supported by substantial evidence.

ALJ's Consideration of Mental Impairments

The ALJ concluded that Potysman's "medically determinable impairment of depression/anxiety" was nonsevere because it did not

6

cause more than minimal limitation in his ability to perform basic mental work activities. (Tr. 14.) According to Potysman, the ALJ erred by failing to consider his mental impairments of a high degree of distractibility and at least moderate impairment in activities of daily living, focus and concentration. Potysman argues that the ALJ improperly denied his claim based on his failure to seek mental health treatment without considering his reasons for not seeking treatment.

The record indicates that Potysman complained of depression with anxiety in March 2010, for which he was prescribed medication. (Tr. 314.) In May 2011, Potysman reported to his family physician that his moods had improved after starting on Fluxotine daily. (Tr. 578.) In June 2010, Alan H. Wax, Ph.D., conducted a mental status examination of Potysman. In that examination, Potysman reported that he had been diagnosed with depression, was "fine" with all aspects of self-care, performed needed functions on a daily basis, did not have any friends, enjoyed being with his daughter and "that's about it." (Tr. 355.) He failed several trials of the Digit Memory Test. (Tr. 354.) Dr. Wax found that Potysman alleged some symptomology of depression, and that his cognitive functioning was in the Low-Average range, with corresponding memory, attention, communication and focusing. (Tr. 355.) Dr. Wax diagnosed him with dysthymic disorder, and assigned him a Global Assessment of Functioning ("GAF") score of 55. (Tr.

7

356.) The ALJ gave this GAF score little weight. (Tr. 14.) In May 2011, the State agency psychological consultant opined that there was insufficient evidence to make a determination on Potysman's disability claim. (Tr. 557.) The ALJ gave this opinion no weight. (Tr. 14.)

On July 18, 2011, Douglas D. Streich, Ph.D., conducted a mental status examination of Potysman at the request of the Disability Determination Bureau. At the time of the exam, Potysman reported that his mood was "a little better" in response to using antidepressant medication, and that he had been prescribed Ritalin as a child. (Tr. 587; *see* Tr. 585, 588.) He indicated that he slept between nineteen to twenty hours per day due to a combination of depression and lethargy related to chronic pain symptoms, and that recently he spent eight weeks in his mother's house without ever leaving the property. (Tr. 587, 589.) Dr. Streich noted affective, behavioral, and cognitive components of depression, multiple symptoms of anxiety, difficulty retrieving information, and a high level of extraneous motor activity such as rapid physical movements, a rapid voice tempo and some impulsivity. (Tr. 587-88.) Dr. Streich diagnosed Potysman with: major depressive disorder, recurrent, moderate; dysthymic disorder; anxiety disorder NOS; and ADHD. (Tr. 589.) Dr. Streich assigned him a GAF score of 56. (*Id*.) He noted that Potysman continued to manifest high degrees of distractibility, impulsivity, and

hyperactivity. (Tr. 590.) He opined that Potysman's "ADHD and depressive/anxiety symptoms reduce his overall coping efforts, but would probably not exclude him from working some kind of job." (*Id.*) Dr. Streich did not opine as to what kind of job Potysman would be able to perform, though he noted that Potysman's spelling and math skills were extremely weak, and testing would need to be completed to determine whether he has learning disabilities. (*Id.*) The ALJ gave Dr. Streich's opinion great weight because of Potysman's "lack of mental health treatment with a specialist, medications that appear to control his symptoms and the fact that [Potysman's] primary complaints are physical in nature." (Tr. 14.)

On July 21, 2011, the State agency psychological consultant at the reconsideration level opined that Potysman had: ADHD; major depressive disorder, recurrent, moderate; dysthymic D/O; and anxiety D/O. (Tr. 592, 594, 596.) Regarding functional limitations, the consultant categorized Potysman as having a moderate degree of limitation in activities of daily living, a mild degree of limitation in maintaining social functioning, a moderate degree of limitation in maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 601.) He opined that Potysman was not significantly limited in the areas of social interaction and adaptation, and was moderately limited in some aspects of understanding and memory and sustained

9

concentration and persistence. (Tr. 605-06.) The ALJ noted that the consultant opined that Potysman retained the ability to perform simple, repetitive tasks on a sustained basis without extraordinary accommodations. (Tr. 15.) The ALJ gave this opinion little weight based on "the lack of mental health treatment, the extent of [Potysman's] activities of daily living, his ability to interact with others and the fact [that] his medications reportedly help his symptoms." (Tr. 15.)

At the SSA hearing in October 2012, the ALJ asked Potysman whether he was seeing anyone for counseling or had been hospitalized for depression, to which Potysman responded no. (Tr. 45-46.) When the ALJ asked Potysman whether he was taking medications for depression, Potysman testified that his family doctor prescribed Paxil for him. (Tr. 46.) The ALJ did not ask Potysman why he had not sought mental health treatment with a specialist. When the ALJ later asked Potysman if he had "tried any nontraditional treatment for anything," Potysman testified that he did not have any insurance, and had "no money" to pay for it. (Tr. 55.)

The ALJ concluded that Potysman's "medically determinable impairment of depression/anxiety does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore nonsevere." (Tr. 14.) He based this determination on the fact that Potysman took medication for

10

depression, "but receives no regular counseling, nor was he ever psychiatrically hospitalized." (*Id.*)

On appeal, Potysman argues that the ALJ erred by failing to consider the reasons for his lack of mental health treatment. Under Social Security Ruling 16-3p ("SSR 16-3p"), an ALJ may not use the failure to pursue treatment as a reason for discounting an individual's claims regarding symptom intensity, persistence, and limiting effects "without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2016 WL 1119029, at *8; *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition" from the failure to undergo treatment "unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96–7p)).[1] When evaluating symptom severity, the ALJ "will consider and address reasons for not pursuing treatment that are pertinent to an individual's case." SSR 16-3p, 2016 WL 1119029, at *9. SSR 16-3p provides that the ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative

---

[1] SSR 16-3p went into effect on March 16, 2016, superseding SSR 96-7p. SSR 16-3p, 2016 WL 1119029, at *1. "Though SSR 16-3p post-dates the ALJ hearing in this case, the application of a new policy to matters on appeal is appropriate where, as here, the new ruling is a clarification of, rather than a change to, existing law." *Jones v. Colvin,* No. 15 C 11310, 2016 WL 4798956, at *4 (N.D. Ill. Sept. 14, 2016) (citing *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993) (overruled on other grounds by *Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999), *McNeal v. Colvin,* No. 14 C 3722, 2016 WL 1594992 at *8, n.3 (N.D. Ill. Apr. 21, 2016), and *Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320 at *6 (N.D. Ill. Apr. 8, 2016)).

11

proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id*. at *8.

Courts have found that an ALJ "is not free to base his symptom evaluation on Plaintiff's lack of medical care while omitting any discussion of evidence about Plaintiff's reasons for not seeking treatment." *Jones v. Colvin*, No. 15 C 11310, 2016 WL 4798956, at *5 (N.D. Ill. Sept. 14, 2016) (citing *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (where ALJ discredited a claimant's testimony based on a lack of treatment but overlooked evidence that she "was uninsured and uncertain how surgery could be paid for," the "failure to explore this evidence was a legal error")); *see Roddy v Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) ("an ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide") (citing SSR 96-7p). "If the ALJ disbelieves Plaintiff's proffered explanations or finds those reasons insufficient to explain his sparse treatment history, he is required to explain why. The ALJ's failure to explain how he considered Plaintiff's explanations for his gaps in treatment is an error requiring remand." *Jones*, 2016 WL 4798956 at *5.

On appeal, Potysman indicates that he did not seek mental health treatment due to financial difficulties and poor insight

into his mental condition. (DE #21 at 18.) Inability to pay is expressly listed in the regulations as a proper explanation for failure to seek treatment. SSR 16-3p provides that an ALJ may consider that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services." SSR 16-3p, 2016 WL 1119029, at *9. An ALJ may also consider that "[d]ue to a mental impairment . . . an individual may not be aware that he or she has a disorder that requires treatment." *Id*.

In the decision, the ALJ repeatedly relied on Potysman's lack of mental health treatment as a basis for finding his mental impairments to be nonsevere. (*See* Tr. 14 (noting Potysman "receives no regular counseling"); *id*. (noting Potysman's "lack of mental health treatment with a specialist"); Tr. 15 (giving State agency specialist's opinion little weight "[d]ue to the lack of mental health treatment," among other factors).) Potysman's hearing testimony suggests that financial difficulties, *i.e.,* lack of insurance and "no money," may have played a part in his failure to seek treatment. However, the ALJ failed to ask Potysman why he did not seek mental health treatment, and did not attempt to consider any reasons for the lack of mental health treatment in the decision. It is impossible for this Court to know if considering this reason would have caused the ALJ to reach a different decision, and if so, whether that would have ultimately affected his decision in this case. Because the ALJ is required

to inquire about a claimant's reasons for not seeking treatment, his failure to do so is an error requiring remand. *See Jones*, 2016 WL 4798956 at *5; *McVey v. Colvin*, No. 115CV00034TABSEB, 2015 WL 8328712, at *6 (S.D. Ind. Dec. 8, 2015) (finding error requiring remand where the ALJ "did not discuss [claimant's] inability to afford care when discrediting his allegations of infrequent care").

Potysman's Remaining Arguments

Having found remand necessary due to the ALJ's error in failing to address Potysman's reasons for his lack of mental health treatment, the Court finds no compelling reason to address Potysman's remaining arguments in detail. The Court makes no findings regarding the merits of Potysman's claims. On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that the ALJ may build a logical bridge between the evidence and his conclusions.

CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

DATED: November 2, 2016          /s/ RUDY LOZANO, Judge
                                 **United States District Court**